UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-cr-00703-SRC-2 |
| | ) | |
| DERRICK L. HOLLINS, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant Derrick L. Hollins, Jr., represented by defense counsel Donnell Smith, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count III (bank fraud) and Count VII (possession of stolen mail matter) of the Indictment, the Government agrees to move for the dismissal as to the defendant of Counts IV and VIII at the time of sentencing. Moreover, the United States agrees that no further

1

federal prosecution will be brought in this District relating to the check fraud scheme described in the Indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count III and Count VII, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: any and all funds obtained as a result of the defendant's offenses of bank fraud and possession of stolen mail matter.

## 3. ELEMENTS:

### a. Count III (Bank Fraud)

As to Count III, the defendant admits to knowingly violating Title 18, United States Code, Section 1344(2), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant knowingly executed a scheme to obtain any of the moneys owned by, or under the custody and control of, a financial institution, by means of material false or fraudulent pretenses, representations, or promises; and

*Two*, the financial institution was insured by the Federal Deposit Insurance Corporation.

**b.  Count VII (Possession of Stolen Mail Matter)**

As to Count VII, the defendant admits to knowingly violating Title 18, United States Code, Section 1708, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant unlawfully had in his possession an article of mail or thing contained therein;

*Two*, this article of mail or thing contained therein had been stolen from an authorized depository for mail matter; and

*Three*, the defendant knew that the article of mail or thing contained therein had been stolen.

**4.  FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning no later than in or about February 2021, and continuing through at least in or about December 2021, in the Eastern District of Missouri, the defendant Derrick L. Hollins, Jr. devised and participated in a scheme to obtain money owned by or under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations, and promises.

More specifically, Hollins engaged in a scheme to fraudulently deposit stolen and altered checks and withdraw the check funds as proceeds.  As part of the scheme, Hollins recruited third

parties to provide debit cards, Personal Identification Numbers ("PINs"), and other banking information for bank accounts belonging to third parties at financial institutions, for the purpose of depositing the altered checks into the third-party bank accounts. One of the ways that Hollins recruited account holders was using his social media accounts, specifically Facebook and Instagram. During the scheme, Hollins periodically made posts to his social media accounts soliciting third parties with bank accounts and who were interested in earning money to contact him. Hollins subsequently communicated directly with account holders about the scheme over social media, specifically to discuss the deposit of checks in their bank accounts, to share the account holder's banking information, to make arrangements for Hollins to pick up the account holder's debit card, to withdraw or transfer funds made available from the check deposit, and to divide proceeds. Hollins offered account holders a portion of the funds from the altered check deposited into their bank accounts in exchange for providing their debit card, PIN, and other banking information, such as mobile banking usernames and passwords. The third-party account holders recruited by Hollins and who agreed to let Hollins use their bank accounts as part of the scheme included Individual P.H., Individual Q.A., and Individual A.D.

As part of the scheme, Hollins obtained checks that had been placed in U.S. Postal Service ("USPS") collection boxes by victims in St. Louis County and St. Louis City, Missouri. When obtaining these checks, Hollins knew that they had been stolen from the U.S. mail. Hollins then altered these checks by "washing" them—removing the payee and amount payable filled out by the victim who wrote the check, and the victim's signature—and filling in the checks himself. Hollins wrote the checks to be made payable to the third-party account holders and in amounts

4

typically ranging between $4,000 to $6,000, amounts far greater than the amount originally written on the check. Hollins also forged the victim's signature on the altered check.

As part of the scheme, Hollins deposited these altered checks into the third-party bank accounts for the purpose of inflating the balances in these accounts. Typically, Hollins, using the debit card and PIN provided by an account holder, deposited the altered check at an ATM at the account holder's bank in St. Louis County and St. Louis City, Missouri. Hollins then either monitored the third party's bank account himself, using the mobile banking username and password provided by the account holder, for when the bank made funds available from the altered check, or instructed the third-party account holder to notify Hollins once funds were made available. Hollins monitored the account in order to withdraw funds as soon as possible after the bank made them available and before the bank discovered that the check was fraudulent. Once funds were made available, Hollins withdrew the proceeds himself or instructed the account holder to withdraw the proceeds, typically through cash withdrawals at ATMs or electronic transfers using the mobile payment service Cash App.

As to Count III, in or around August 2021, Hollins made a post to his Facebook account recruiting third-party account holders as part of the scheme, to which Individual P.H. responded. Hollins and Individual P.H. then directly messaged each other on Facebook to discuss the deposit of a $5,200 check into the bank account of Individual P.H. Hollins offered Individual P.H. $2,400 in proceeds from the check deposit, and, in exchange, Individual P.H. agreed to let Hollins use Individual P.H.'s bank account for the deposit. On or about August 23, 2021, for the purpose of executing the scheme, Hollins deposited an altered check #3606, drawn on Commerce Bank account #xxxxx0893 and made payable to Individual P.H. in the amount of $5,200, into Individual

5

P.H.'s First Community Credit Union account #xxxxxxx8975, for the purpose of obtaining money under the custody and control of First Community Credit Union, a financial institution within the meaning of Title 18, United States Code, Section 20.

As to Count VII, Hollins obtained the check #3606, described above, knowing it had been stolen from a USPS collection box, and altered it be made payable to Individual P.H. in the amount of $5,200. On or about August 23, 2021, Hollins unlawfully had in his possession the altered check #3606, which had been stolen from the U.S. mail, when he deposited the altered check into the First Community Credit Union account of Individual P.H. at a First Community Credit Union ATM in Richmond Heights, Missouri.

During the scheme, Hollins deposited or attempted to deposit altered checks totaling more than $40,000 and received at least $10,668.50 in proceeds. These deposits included the deposit of altered checks in the amounts of $6,000 and $8,000 into the Great Southern Bank account of Individual Q.A and the deposit of an altered check in the amount of $5,800 into the Neighbors Credit Union account of Individual A.D.

Over the course of the scheme, Hollins possessed checks belonging to at least ten victims, which checks Hollins knew had been stolen from USPS collection boxes and Hollins subsequently altered as part of the scheme. Through the deposit of stolen and altered checks, Hollins caused an actual loss to at least ten financial institutions.

## 5. **STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Count III is imprisonment of not more

than 30 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Count VII is imprisonment of not more than 5 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES (2021 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a. Chapter 2 Offense Conduct:

(1) **Base Offense Level:** The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 6 levels should be added pursuant to Section 2B1.1(b)(1)(H), because the loss exceeds $40,000, but does not exceed $95,000.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(2)(A)(i), because the offense involved 10 or more victims.

### b. Chapter 3 Adjustments:

7

(1) **Acceptance of Responsibility:** The parties agree that two levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**c.** **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 13.

**d.** **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e.** **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

8

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

    **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

    **(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

    **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records

pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    **a. Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b.   Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    **c. Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.     These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

    **d. Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant

toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

    **e.** **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

    **f.** **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

    **g.** **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon her interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

11

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $10,668.50. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. <u>ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS</u>:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

12

of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in

this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. **CONSEQUENCES OF POST-PLEA MISCONDUCT**:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12.  <u>NO RIGHT TO WITHDRAW GUILTY PLEA</u>:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.


8/18/22
Date

JONATHAN A. CLOW
Assistant United States Attorney


8/18/22
Date

DERRICK L. HOLLINS, JR.,
Defendant


8/18/22
Date

DONNELL SMITH
Attorney for Defendant

15